## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Indian Acres Club
of Thornburg, Inc.

v.

Estate of Franklin Glover et al.

January 25, 1996

Case No. CL95-334

By Judge William H. Ledbetter, Jr.

In this declaratory judgment action, the court is asked to determine the validity of a lease assignment.

Indian Acres Club is a property owners' association that manages various affairs of the property owners of Indian Acres, a recreational resort in Spotsylvania County. Among other things, it owns a store known as the Trading Post located near the entrance to the resort.

By agreement dated April 4, 1986, the Club leased the store premises, along with a number of fixtures, to Franklin D. Glover for the operation of a convenience market and for sale and rental of recreational equipment for the benefit of property owners and their guests. The original term of the lease was five years, with the right to two five-year extensions subject to certain conditions.

Glover renewed the lease in 1991. The present term expires April 14, 1996.

Glover died May 23, 1995. Rachel Crowe claims that she is entitled to possession of the Trading Post by virtue of a 1994 assignment of the lease. Meanwhile, Glover's estate has disavowed any interest in the store. The administratrix of his estate has signed an agreement with the Club relinquishing any interest the Glover estate may have in the premises.

The Club instituted this case on July 6, 1995, for a determination of the parties' rights in the store premises. On September 7, 1995, the court

denied the Club's request for a temporary injunction. The case was tried without a jury on December 18, 1995. Most of the material facts were stipulated. The court heard testimony of several witnesses, received other evidence, and later reviewed memoranda of law.

First, the Club contends that the agreement it made with Glover on April 4, 1986, is a "personal service contract," not a lease, so that it expired automatically upon Glover's death. The court rejects that contention. The four-page agreement is what it says it is: a lease. By its terms, it clearly transfers possession of the Trading Post premises, together with several fixtures, to Glover for a time certain in exchange for specified rent. Although the agreement imposes certain obligations on the tenant in connection with the operation of the store, it nonetheless created a leasehold estate and gave rise to a landlord-tenant relationship.

Next, the Club argues that the 1994 assignment relied upon by Crowe is invalid. On that point, the evidence establishes the following facts.

The original lease between the Club and Glover is expressly non-assignable. Paragraph 12 of the lease provides: "Glover and the Club agree that this agreement is not assignable."

By addendum dated January 2, 1988, paragraph 12 was modified so that Glover "shall have the right to assign his interest [in the lease] at his discretion." The addendum was signed by Glover and Paul E. Ritter, president of the Club.

On May 14, 1994, Glover assigned "the Trading Post" to Crowe. That paper was signed only by Glover. The original cannot be located; a copy of it was admitted in evidence. Crowe did not know of the existence of the assignment until later.

Despite the so-called assignment, Glover continued to operate the Trading Post. He held himself out as the tenant of the premises for at least ten months after the assignment.

On July 26, 1986, the Club's board of directors adopted a resolution specifically barring its officers and employees from binding the Club to *any* contract that purports to lease or permit exclusive use of real estate owned or controlled by the Club without approval of the board. Further, the resolution prohibits officers and employees of the Club from entering into any other contract or agreement for a term exceeding three years without approval of the board. The resolution was readopted on October 25, 1986, and "three years" was changed to "one year." The resolution, as modified, went through second reading and was officially adopted on November 22, 1986.

Crowe was a member of the board when these resolutions were discussed and adopted. In fact, she seconded the motion for passage of the resolution on second reading and voted in favor of it.

The keeper of the corporate records testified without contradiction that the resolution has not been modified or repealed since its adoption in 1986. She also testified that the lease addendum removing the non-assignability clause from Glover's lease was never approved by the board; in fact, the board was unaware of it until this controversy arose.

Being a restraint against alienation, a condition against assignment of a lease is governed by the rule of strict construction. However, where an express prohibition clearly and definitely appears in the lease, it will be enforced. See 11B M.J., *Landlord and Tenant*, § 57. The non-assignability clause in paragraph 12 of Glover's lease is clear, definite, and unambiguous. Therefore, it is a valid restraint against Glover's assignment of the lease.

As for the 1988 addendum removing the non-assignability clause, it is clear from the evidence that Ritter, acting as president of the Club, had no authority to sign it. In fact, he acted contrary to the express directives of the board of directors of the corporation in signing the addendum.

Notwithstanding Ritter's lack of actual authority to change a material provision of the lease, it is suggested that Ritter, as president of the corporation, had implied powers to make the addendum. A corporate president does have certain implied powers to act on behalf of the corporation. However, the implied authority of a corporate president is limited to acts within the ordinary course of the corporation's business. *Mosell Realty Corp. v. Schofield*, 183 Va. 782 (1945). Authority to bind the corporation to a multi-year lease, or to change a material term of such a lease, cannot be imputed or implied in this case. The Club is not in the business of leasing real estate. It is a property owners' association, and the terms of a long-term lease of its store premises and fixtures are not in the usual course of the corporation's operations. Such a transaction under these circumstances was an extraordinary transaction that the president had no implied power to negotiate and carry out. *See* 4B M.J., *Corporations*, § 173; 1A M.J., *Agency*, § 24 et seq. Further, no agent, including a corporate president, can possess an implied power to do an action that is specifically prohibited by his principal.

In addition to actual and implied powers, corporate presidents and other agents can be clothed with a degree of "apparent authority." Under some

circumstances, apparent authority, even when in conflict with actual authority, can bind the principal. *See* 1A M.J., *Agency*, § 25.

Crowe cannot rest her case on the apparent authority of Ritter because *she knew that he had no authority* whatever to negotiate and sign a lease or a lease addendum without approval of the board. As explained above, the evidence shows that she was present at the board meetings when the resolution that precluded Ritter from binding the Club to such agreements was discussed and adopted. She seconded the motion for its adoption. She voted for it.

Significantly, the evidence shows that the resolution was not adopted as an abstract proposition. The minutes of the board meeting of July 26, 1986, at which the matter was first raised, indicated that the issue concerning authority to contract on behalf of the Club arose from an earlier incident in which a Club president (Ritter's predecessor) had made an agreement with Glover expanding Glover's rights with respect to the Trading Post. In effect, the board's resolution restricting the authority of officers to make contracts was directed precisely at the sort of thing that Glover and Ritter attempted to do by the lease addendum of January 2, 1988.

Because Ritter flagrantly disregarded specific board instructions when he executed the lease addendum removing the non-assignability clause, and Crowe knew he had no authority to do that, the lease addendum is *ultra vires* and void. Because the addendum is void, Glover's attempt to assign the lease to Crowe in contravention of the terms of the original lease is ineffectual.

The other points raised by the Club need not be decided in light of the court's opinion regarding the invalidity of the lease addendum.

For the reasons explained, the court will declare that the purported lease assignment is invalid and Crowe must vacate the premises without delay. Because Glover is deceased and his estate has relinquished any interest it may have in the premises, the leasehold interest created by the agreement dated April 4, 1986, will be declared ended.